PATRICK BEATTY *vs.* HENRY WEED & another.
JOHN LYDON *vs.* SAME.

Middlesex.    April 1, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

If a superintendent directing the demolition of a boiler house goes to dinner, leaving the men whom he has employed for the work engaged upon it according to a safe method prescribed by him, and in his absence three of the men devise a speedier way of demolishing the building by means of a heavy iron pipe used as a battering ram and applying this method knock out a brick pier supporting one corner of the building, causing the whole building to fall suddenly and to injure two of the workmen who had nothing to do with the adoption or use of the battering ram, there is no evidence to support an action by the injured workmen against the superintendent for negligence.

TWO ACTIONS OF TORT against Henry Weed and the Winchester Manufacturing Company, also originally against two other defendants as to whom the plaintiffs discontinued their actions, for personal injuries sustained while in the employ of the defendant Weed.    Writs dated March 13, 1903.

In the Superior Court the cases were tried together before *De Courcy*, J.    At the close of the evidence the judge ruled that the plaintiffs could not recover against the Winchester Manufacturing Company and directed a verdict for that defendant. He refused to rule that the plaintiffs could not recover against the defendant Weed, who was one of the incorporators of the Winchester Manufacturing Company, a corporation manufacturing gelatine, and was its superintendent.    The defendant Weed employed the plaintiffs and four other men for the work described in the opinion.*    The jury returned a verdict for the plaintiff Beatty in the sum of $2,000 and for the plaintiff Lydon in the sum of $1,000.    The defendant Weed alleged exceptions.

*D. T. Montague & W. Keyes,* for the defendant Weed.

*F. P. Curran & J. P. Feeney,* for the plaintiffs.

HAMMOND, J.    The question is whether the evidence warranted the verdict against Weed.

---

* The defendant Weed was sued as owner of the building demolished. The land on which it stood was conveyed to the manufacturing company about three weeks after the accident.

It appears that he was engaged in superintending the demolition of a boiler house. This was a brick building running east and west, twenty-eight feet long, twenty-two feet wide, with brick sides and end walls, and an arched brick roof supported by a brick wall running lengthwise through the building from the ground up to the arch. The thickness of the outside walls was twelve inches and of the centre wall eight inches. The arch roof was eight inches thick, being composed of two layers of brick, set edgewise in cement. Iron stay rods, two or three feet apart, ran crosswise of the building, through the side and centre walls, their ends projecting through the side walls and through a strip of iron upon the outside of the building, to which iron the rods were firmly held by nuts. The southeast corner of the building was supported by a brick pier, there being two doors next to the pier, one on the south side and one on the east side of the building.

On the morning of the accident the plaintiffs with several other men were set to work by Weed to demolish the building. The plaintiffs first knocked out a portion of the west end and then, by Weed's orders, went upon the northerly half of the adjoining part of the roof and began to break that in by hammers, working easterly. While doing this they stood upon the roof, and the bricks, as they were knocked off, fell inside the building. They continued this work several hours until twelve o'clock, when they stopped one half hour for dinner. Upon the easterly end of the building similar work was being done by some of the other men. Only a few feet of the roof, however, had been removed at either end when all the workmen stopped for dinner.

While the men were engaged in this work the defendant Weed, as was his custom, left the premises a few minutes before twelve to go to dinner, and returned in an hour. While he was gone the accident occurred. The plaintiffs' evidence tended to show that at half past twelve the men all resumed work at their respective places. Shortly after resuming, three of the men at work at the easterly end came to the conclusion that there was a more expeditious method of demolishing the structure than that adopted by Weed. Whereupon they looked around and finally found "somewhere on the grounds" a heavy iron pipe about fifteen feet long, and using this as a battering ram against

the pier at the southeast corner of the building speedily demonstrated the accuracy of their theory. The pier being knocked away, down came the whole building in a heap, and the plaintiffs were hurt.

We think that there was no evidence of negligence on the part of Weed. It is plain that the accident was not due to any fault in the plan of demolition adopted by Weed, but to the action of the fellow servants of the plaintiffs in departing from that plan. He had the right to assume that during the short time in which the work would go on in his absence the general directions which he had given would be followed; and we do not think that his failure to anticipate so ambitious and unusual an attempt on the part of his workmen to facilitate the work and shorten the job can be regarded as negligence. Whatever negligence there was, was that of the fellow servants of the plaintiffs.

*Exceptions sustained.*